# Gallivan, to use, v. Wark Co., Appellant.

*Workmen's compensation—Act of June 2, 1915, P. L. 736—
Master and servant—Liability of employer—Common law—De-
fenses—Effect of the act—Substitution of moderate compensation
—Contractor and subcontractor.*

1. At common law, recovery by an employee from his employer
for personal injuries was dependent on the negligence of the em-
ployer, the absence on the part of the employee of an assumption
of risk and of contributory negligence, and also that the injury
was not caused by the negligence of a fellow servant.

2. In passing the Workmen's Compensation Act, the legislature
defined the employer's liability differently from what had thereto-
fore existed, and created new liabilities, for which a proper substi-
tute had to be given, to avoid the bar of the Constitution.

3. Section 201, article II, of the Workmen's Compensation Act
of June 2, 1915, P. L. 736, providing that the common law defenses
should no longer be available, may be considered, inter alia, as a
penalty for not accepting the legislative compensation or as an in-
ducement to cause its acceptance.

4. The schedule of moderate compensation, irrespective of neg-
ligence was the substitute for the defenses withdrawn from the em-
ployer, and for the surrender of the right of action theretofore pos-
sessed by the employee.

*Workmen's compensation—Employees of independent contrac-
tors—New relation between employer or contractor and employees
of subcontractor—Section 203, article II, of the Act of June 2,
1915, P. L. 736.*

5. Section 203, article II, of the Act of June 2, 1915, P. L. 736,
establishes a new relation of employer and employee, between the
employer or principal contractor in a work and the employees of
independent or subcontractors, and is the most drastic interference
with individual rights to be found in the act.

6. Since the relation so established by the section is of purely
statutory origin and imposes liability upon the parties who were
not before in privity of contract, the effect of the section must be
closely considered, and it cannot be given effect beyond what is
absolutely necessary to carry out the definitely expressed purpose
of the legislature.

7. The section applies to the principal contractor; the persons
who are made his employees must be hired by one standing in
contractual relation with him; and they must be working on the

premises, doing something that is a part of the principal contractor's employment or contract.

8. The section makes no effort to relieve the contractual employer, or the employer by hiring, but it adds to the principal contractor's general liability.

9. If the principal contractor does not post a notice refusing to accept liability under article III of the act, and the employee also accepts the act, the effect is to relieve the subcontractor from liability for compensation under this article, unless otherwise agreed between the principal contractor and the subcontractor.

10. If the statutory or principal employer rejects elective compensation, the liability of the subcontractor to his own employees under the act, which was suspended until the statutory employer acted, is reëstablished.

11. The statutory employer remains subject to the act (under section 203) until a definite compensation has been paid or secured to the subcontractor's employee.

12. If this is not done by the subcontractor, then the statutory employer is liable "in the same manner and to the same extent as to his own employees."

13. Where the subcontractor accepts liability under article III of the act, and the principal contractor has rejected it, and the subcontractor's employee has received compensation from his own employer under the act, such payment of compensation severs the principal contractor's connection with the act, and leaves his common law standing unaffected and unimpaired by the Compensation Act.

14. Where the employee of the subcontractor has received compensation from his own employer under the act, he cannot thereafter sue either the paying employer or his insurance company or one standing in the relation of an employer who accepts the act.

15. Such employee may, however, institute a common law action for damages, subject to his own employer's right of subrogation, against the principal employer who had rejected the act, and whose negligence caused the injury.

16. Compensation under the act and damages at common law are different things; the latter includes the former, but the former never the latter, unless article III is accepted.

17. Compensation under the act comprehends loss of earning power, but it does not include compensation for pain and suffering, or for expenses incident to illness, except to a limited extent.

18. The principal contractor cannot contend that the creation of the implied contract by the acceptance of the act by the subcontractor inures to his benefit, and will prevent a common law action against him.

19. Where the principal contractor has rejected liability under the act, and a subcontractor's employee has received compensation from his own employer under the act, the principal or statutory employer is out of the act because (1) he voluntarily withdrew from the scheme of elective competition under article III, through which he might have been protected; (2) the statute has been satisfied by the payment of compensation by the contractual employer; (3) the necessity for section 203 no longer exists; (4) the principal contractor is not an employer under the conditions to which section 201 applies; and (5) section 303 is not intended to cover those who reject elective compensation under article III.

*Negligence — Contractor — Liability for injury to employee of subcontractor.*

20. An original contractor is liable for an injury to an employee of a subcontractor, where it is caused either by a failure to keep the premises in repair, or through the negligent acts of its agents in carrying out their work as it relates to the work of the employees of the independent contractor.

*Negligence—Different causes of the accident—Proximate cause —Evidence.*

21. It is not necessary for the plaintiff in a negligence case to exclude everything which the ingenuity of counsel may suggest as possibly causing or contributing to an accident.

22. Under the circumstances of this case there was no ground for applying the rule that where there are two possible proximate causes of an accident, for one of which defendant is not responsible, the jury will not be permitted to guess which one really caused the accident.

*Negligence—Damages—Excessive verdict.*

23. A verdict of $35,000 will not be set aside as excessive in a negligence case, where it appears that plaintiff was a carpenter, thirty-five years of age, earning normally about $50 a week, that he was very badly burned about the arms, hands, ears, neck and chest, that he had lost the use of both hands, that he was unable to keep his head in normal position, that he suffered intense pain, and that he was permanently disabled.

Mr. Justice SCHAFFER dissented on the amount of the verdict.

Argued December 1, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 269, Jan. T., 1926, by defendant, from judgment of C. P. No. 5, Phila. Co., June T., 1924, No.

13,366, on verdict for plaintiff, in case of John Gallivan, individually and to the use of Charles R. Gow Co., v. Wark Company. Affirmed.

Trespass for personal injuries. Before SMITH, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $35,000. Defendant appealed.

*Error assigned* was, inter alia, refusal of judgment for defendant n. o. v., quoting record.

*Ralph B. Evans,* and *F. B. Bracken,* for appellant.—There was no evidence of negligence: Fredericks v. Refining Co., 282 Pa. 8; Wagner v. Transit Co., 252 Pa. 354.

There were two possible causes of the accident, for one of which defendant was not responsible: Propert v. Flanagan, 277 Pa. 145; Biesecker v. R. R., 276 Pa. 87; King v. Darlington B. & M. Co., 284 Pa. 277; Gausman v. Pearson, 284 Pa. 348.

Plaintiff's only right was to receive compensation under the Workmen's Compensation Law: Qualp v. Stewart, 266 Pa. 502; Bindbeutel v. Willcutt, 244 Mass. 195.

The verdict was excessive: Fredericks v. Refining Co., 282 Pa. 8; Gail v. Phila., 273 Pa. 275; Goldman v. Mitchell, Fletcher & Co., 285 Pa. 116.

*John J. McDevitt, Jr.,* for appellee.—There was ample evidence of negligence: McGrath v. Sugar Co., 282 Pa. 265; Craig v. Mfg. Co., 272 Pa. 219.

Appellee's acceptance from his employer of compensation under the Workmen's Compensation Law did not bar his right of recovery against the general contractor (appellant) who had posted notice of rejection of that law: Gentile v. Ry., 274 Pa. 335; Mayhugh v. Teleph. Co., 265 Pa. 496; Wilson v. B. & I. Works, 85 Pa. Superior Ct. 537; Anderson v. Steel Co., 255 Pa. 33; Mc-

Grath v. Sugar Co., 282 Pa. 265; Turner v. Robbins, 276 Pa. 319; Craig v. Mfg. Co., 272 Pa. 219.

The parties cannot by agreement regulate the payment of compensation: Anderson v. Steel Co., 255 Pa. 33; Highlands v. Ins. Co., 203 Pa. 134; Illinois Auto. Ins. Ex. v. Braun, 280 Pa. 550.

The verdict was not excessive: Fredericks v. Refining Co., 282 Pa. 8.

OPINION BY MR. JUSTICE KEPHART, January 24, 1927:

Plaintiff· was employed by the Gow Company, which was doing the excavation work for a large building as a subcontractor under the Wark Company. He looked after the pumps, and his chief duty was to keep the waterjackets filled. Gasoline was used as the fuel and it was supplied from drums stored on the premises. In the early morning of June 25, 1924, while plaintiff was drawing gasoline into an open can from one of the drums, there was an explosion. Plaintiff was badly burned. The result of his injury is permanent incapacity to labor.

Plaintiff applied for and secured compensation, under the Workmen's Compensation Act of 1915, P. L. 736, as an employee of Gow Company. This action was instituted against the Wark Company, as an independent contractor, for negligent conduct of its work. Defendant offered several defenses which will be considered below in detail.

Appellant's principal contention is that there can be no recovery by an employee, who has received compensation under article III of the Workmen's Compensation Act, against a third person whom the act makes liable to him in the same manner and to the same extent as his actual employer. The question presented is important, and makes necessary a review of the act, together with the purpose of the legislature in adopting it.

Among the questions arising from the relation of master and servant, or employer and employee, is that of

compensation for injuries to the latter, happening during the course of his employment. At common law, recovery was dependent on the negligence of the employer and the absence on the part of the employee of an assumption of risk and of contributory negligence; so also the negligence of a fellow servant would defeat the claim. These were the employer's common law defenses. For economic and social reasons, most if not all of the states and many nations have adopted some system of elective compensation to take care of injured employees in a material way.

In adopting such a system, our legislature considered of primary importance the subject of recovery of damages by action at common law, and applied thereto new rules created by the act. By so doing it defined the employer's liability differently from what had theretofore existed and the result of its work was to create new liabilities. If such liabilities were to be imposed upon the employer, since his old safeguards had been removed, a proper substitute must be given in return, to avoid the bar of the Constitution.

The legislature provided, in article II, section 201, that, as to all future actions to recover damages for personal injuries to an employee, in the course of employment, the common law defenses above mentioned should no longer be available. This section may be considered, inter alia, as a penalty for not accepting the legislative compensation or as an inducement to cause its acceptance. It is undoubtedly the strong feature of the act.

As a substitute for the defenses thus withdrawn from the employer and for the surrender of the right of action theretofore possessed by the employee, a schedule of moderate compensation, irrespective of negligence, was offered. If accepted the result is simple; all common law rights against the employer are superseded by the statutory compensation.

Section 302 permits the employer to refuse to accept article III by indicating that intention in the manner

prescribed. The employer, as to liability, is, in that event, turned back to article II. The employee may then bring an action at law. The latter must prove negligence, but the scope of acts constituting negligence has been broadened by article II. By the same article the employer is shorn of his common law defenses. The damages recoverable in such case are those permissible at common law. Thus far, the act deals with the contractual relations of employer and employee as governed by article II and section 302 (a) of article III.

Section 203 of article II reads as follows: "An employer who permits the entry upon the premises occupied by him or under his control of a laborer or an assistant hired by an employee or contractor......shall be liable to such laborer or assistant in the same manner and to the same extent as his own employee." Appellant, as principal contractor, was placed in this class: Qualp v. Stewart, 266 Pa. 502.

By this section the legislature took hold of independent groups (employers on one hand and employees on the other) which had never borne the relation of employer and employee as to each other, and created that relation for the purposes of the act. A person thus termed employer does not pay, cannot discharge, in fact has absolutely no direct relation to such persons, nor they to him. This is the most drastic interference with individual rights to be found in the act. The relation is of purely statutory origin, and as it forces liability upon parties who are not in privity of contract, and causes one of them (hereinafter referred to as a statutory employer) to be liable for accidents for which he may in no way be responsible, its effect must receive close consideration.

The intent and purpose of the act is to secure compensation to employees who are injured while engaged at their regular occupations, as specified, without requiring negligence of the employer to appear. Section 203 has to do with different masters and different servants

engaged in a common enterprise, whose combined efforts have one definite object or accomplishment in view. It cannot, however, be given effect beyond what is absolutely necessary to carry out the definitely expressed purpose of the legislature; it cannot be made to cover, by implication, situations not within the intent and scope of the Compensation Act.

The section applies to the principal contractor; the persons who are made his employees must be hired by one standing in contractual relation with him; they must be working on the premises doing something that is a part of the principal contractor's employment or contract. The section makes no effort to relieve the contractual employer, or the employer by hiring, but it adds to the principal contractor's general liability.

Section 302 (b) of article III reads as follows: "An employer who permits the entry upon premises...... under his control, of a laborer......hired by an employee or contractor, for the performance......of the employer's regular business entrusted to that employee or contractor, shall be conclusively presumed to have agreed to pay to such laborer......compensation [under article III]......unless the employer shall post ......a notice of his intention not to pay such compensation." As illustrated in the case of the contractual employer under 302 (a), the statutory employer may refuse, under section 302 (b), to pay the legislative elective compensation fixed under article III.

If, under 302 (b), the statutory employer accepts article III and the employee does likewise, the effect is to relieve the subcontractor from liability for compensation under this article. "Where article III binds such [statutory] employer, and such laborer......, it shall not be in effect between the intermediate employer or contractor and such laborer......unless otherwise expressly agreed [between the statutory employer and the subcontractor]." We need not discuss the effect of payment of elective compensation by the statutory employer

on any further liability of the subcontractor under article II. Where he accepts, under section 302 (b), section 303 then relieves the statutory employer of all liability for compensation or damages to the employee of the subcontractor in any form or amount "other than as provided in article III." True, the statutory employer may expressly agree with the subcontractor that the latter carry insurance under 302 (b), but this applies only when the statutory employer accepts article III.

If, under 302 (b), the statutory employer rejects elective compensation (of article III), then he does not agree to pay compensation under article III. But that article is in effect as to the subcontractor, or employer in the usual sense. His liability to his own employees under 302 (a), which was suspended until the statutory employer acted under 302 (b), is reëstablished. But the subcontractor, as a contractual employer under 302 (a) may also reject article III.

We then have a situation where both employers have rejected elective compensation. In discussing section 302 (a) we stated the liability in such cases of the subcontractor, or the employer by hiring. The statutory employer, in thus disavowing elective compensation, is not relieved entirely under the act from paying damages, (or from his liability at common law). If he were, then section 203 would be meaningless; in addition to being relieved from paying compensation, he would be released from liability under article II. The legislative intent to bring him into the act would be entirely frustrated.

The statutory employer thus remains subject to the act (under section 203), until a definite compensation has been paid or secured to the subcontractor's employee. If, for any reason, this is not done by the subcontractor, then the statutory employer, the principal contractor, is liable "in the same manner and to the same extent as to his own employees": section 203. We need not here discuss the limit or extent of this statu-

tory liability; nor, considering the purpose for which he was brought into the act and his prior relation to this employee, need we discuss the quantity or the quality of the proof necessary to establish the principal contractor's negligence.

The right of action under article II is recognized in article III, section 302 (b), when it refers to the acceptance by the subcontractor's employees of the statutory employer's liability under article III.   The act states that he does so "in lieu of his right of action under article II."   The employee never had the status of an employee of the principal contractor at common law, and hence would not be an "employee in the course of employment" as to such person under section 201.   He becomes such through section 203.

We now reach the situation covered by the facts in this case.   What we have said above, although lengthy, serves to illuminate the discussion which follows.   Under 302 (b), the statutory employer, who is the principal contractor, rejects elective compensation under article III.   The subcontractor, the contractual employer, by his silence, accepts article III, takes out insurance and actually pays or secures payment to his employee.

As previously discussed, where both the statutory employer and the subcontractor reject article III, the right of action against the statutory employer under article II is still in effect.   But when the subcontractor does all that the statutory employer was required to do under the act, a very different question presents itself.   The sole reason for bringing the statutory employer into the act was to make certain that the legislative purpose of securing adjusted compensation would be accomplished. The statutory employer has voluntarily withdrawn from article III.   He has publicly stated that he would not pay elective compensation to the employees of the subcontractor and has thus withdrawn from the most essential feature of the act.    What hold it may have on him is negligible; while real, the probabilities of its being

called into action are remote. The act of the subcontractor in paying or securing payment of elective compensation under article III completely severs the statutory employer's connection with the act. It leaves this appellant as it found him, his common law standing unaffected and unimpaired by the Compensation Act. This is the logical conclusion and, in our judgment, the common sense view.

Appellant cannot now complain if required to pay for the negligence of its own employees in causing this injury. Suppose the principal contractor had accepted the act for its own employees, which it did, and one of its employees is injured in the course of employment through the negligence of an employee of the subcontractor. Is the servant of the principal contractor anywhere, under the provisions of this act, denied relief at common law against the subcontractor as an independent contractor?

Appellant urges that the employee is entitled to but one compensation. This is true, and under the act only one employer is called on to pay elective compensation. No other employer or one standing in that relation under article III can be called on to pay it the second time. Where an employee receives compensation under article III for an injury in the course of his employment, he cannot thereafter sue either the paying employer or his insurance company or one standing in the relation of an employer who accepts the act. Section 303 prevents any such duplication.

But compensation under article III of the act is one thing and damages at common law quite another; the latter includes the former, but the former never the latter, unless article III is accepted. Elective compensation is based on a moderate and definite scale. It comprehends the loss of earning power, having regard to wages paid theretofore, and to the character and duration of the disability. It does not include compensation for pain and suffering, or for expenses incident to ill-

ness, except as the act provides. By withdrawing from the act, these elements of damage are kept alive. It would be manifestly unfair to hold that he might reject the liability imposed by article III, avoid the consequences of elective compensation, and then avoid liability for all the other elements of damage, simply because section 203 designates him as an employer with the subcontractor, doing the very act that section provided for, and carrying the entire burden that has resulted from the statutory employer's own negligence.

Appellant cannot derive any advantage from the implied contract arising out of the acceptance of 302 (a) between the subcontractor and his employee. Section 303, article III reads: "Such agreement [302 (a), 302 (b)] shall constitute an acceptance of all the provisions of article III of this act, and shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment, or to any other method of determination thereof, other than as provided in article III of this act." Appellant contends the creation of the implied contract by the acceptance of article III by the subcontractor inures to its benefit under this section. The implied agreement we are now considering is brought about through section 302 (a) dealing with contracts of hiring, and this is the agreement referred to in section 303. The subcontractor's agreement with the principal contractor to carry insurance, where the statutory employer rejects article III, is not covered by section 303 or any other part of the act. Article III requires of the subcontractor acceptance or rejection. The principal contractor is no party to the implied contract under section 302 (a). He is not mentioned there. Section 303 covers those who pay elective compensation or accept article III, and does not apply to those who avoid it. Nor does it deal with secret agreements not covered by the act. Furthermore, to hold, as appellant desires would disturb the harmo-

nious working of this law, and seriously jeopardize the right of subrogation, which is a necessary element of the act, as illustrated by the intervention here of appellee's employer, the subcontractor.

To repeat, the statutory employer is out of the act for the following reasons: (1) He voluntarily withdrew from the scheme of elective compensation under article III through which he might have been protected. (2) The statute has been satisfied by the payment of compensation by the contractual employer. The subcontractor does the thing, the accomplishment of which was the sole purpose for bringing the principal contractor into the act, when he pays the "liability to such laborer or assistant in the same manner and to the same extent [as the principal employer pays] his own employees." (3) The necessity for section 203 no longer exists. (4) The principal contractor is not an employer, under these conditions, to whom section 201 applies. (5) Section 303 was not intended to cover those who reject elective compensation under article III.

Appellant also urges that plaintiff's evidence does not prove it was negligent, and, in the event that this issue be decided against its contention, denies its negligence was the proximate cause of the accident. There was no direct evidence as to the cause of the explosion. Plaintiff's theory is that it was occasioned by an explosive mixture coming in contact with the heat generated by acetylene lights belonging to the Wark Company, used to light the excavation. One of the lights was ten feet away from the drums. When the accident happened, the general labor had ceased, but plaintiff's work continued through the night. Defendant contends that the explosion was caused by a kerosene lantern used near the drums.

We have held as to accidents of this character that the original contractor is liable for an injury to an employee of a subcontractor, where it is caused either by failure to keep the premises in repair (McGrath v.

Pennsylvania Sugar Co. 282 Pa., 265, 271; Craig v. Riter-Conley Mfg. Co., 272 Pa. 219), or through the negligent acts of its agents carrying out their work as it relates to the work of the employees of an independent employer. The evidence of both parties shows the lamps were burning at the time of the accident. They were under defendant's control, and were placed close enough to the drums so that defendant should have anticipated that, when gasoline was being drawn from the drums, an explosive mixture would reach the lights. The question of negligence was for the jury.

Plaintiff testified that immediately before the accident happened he, with Grant, another employee, placed a gasoline drum on the rack after placing a spigot in it. In doing this work they used a kerosene lantern to aid them. Grant left immediately thereafter, taking the lantern with him, and had been gone three minutes or more when the explosion occurred. The distance of the lantern from the place where the gasoline was drawn does not definitely appear. One of the witnesses said he thought it was on top of a boiler, one hundred feet away, where Grant placed it. This witness was some distance away, but was the first to reach appellee after the explosion. Grant did not come up until a few seconds later. This would indicate at least that he was farther away than this witness. Grant had three minutes to walk away, in which time he could go some distance. The lantern might be used with safety ten to twenty-five feet from the gasoline. Defendant contends that this evidence shows there were two possible proximate causes of the accident, for one of which it was not responsible, and the jury should not have been permitted to guess which one actually caused the accident. The portions of testimony mentioned above do not establish a second proximate cause; if it be found in defendant's evidence, then the principle for which appellant contends can have no application. It is not necessary for the plaintiff to exclude everything which the ingenuity

of counsel may suggest as possibly causing or contributing to an accident: Beisecker v. Pennsylvania Railroad Co., 276 Pa., 87, 90; King v. Darlington B. & M. Co., 284 Pa. 277, 283.

Appellant further contends that recovery is barred by plaintiff's contributory negligence. He was drawing gasoline from the drum into an open can where the explosion occurred. This question was properly submitted to the jury. We cannot hold that it was contributory negligence as a matter of law.

Under all the circumstances, we do not consider the verdict excessive. In Fredericks v. Atlantic Refining Co., 282 Pa. 8, cited by appellant, the injuries were not as serious as those of appellee. Frederick lost the partial use of one hand. He was badly burned, it is true; he suffered intense pain; his throat and mouth were burned; his face was also burned. Gallivan has lost the use of both hands and was badly burned about the arms, hands, head, ears, neck, and chest; he has since been incapacitated for work, and is unable to keep his head in its normal position. The flesh of his burned arms and hands is tender so that when he picks up anything it pains him. The doctors describe him as horribly burned; we have no doubt the description is correct. He was a carpenter and his normal wages up to within a week of the accident were from $50 to $55 a week. He was a young man, about thirty-two years of age. The burden of proving loss of earning power was well met. The wages received, the age of appellee, and expenses incident to the accident justify the amount of the verdict; at least it is not such a verdict that we, as an appellate court, should set it aside.

The judgment of the court below is affirmed.

Mr. Justice SCHAFFER dissented on the amount of the verdict.