D'Alessandro et al. *v.* Barfield et al., Appellants.

Argued November 29, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*J. W. McWilliams,* with him *G. A. Troutman,* of *McWilliams, Wagoner & Troutman,* for appellants.

*Robert M. Bernstein,* with him *Milford J. Meyer* and *Gabriel Berk,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 3, 1944:

This appeal is from the refusal of the court below to enter judgment for the defendant non obstante veredicto.

Plaintiffs' action in trespass was brought against the defendants Barfield and Fisher, trading as Wissahickon Dairies, and one John J. Coyle, for the recovery of damages for personal injuries sustained by the minor plaintiff in a collision between two motor trucks owned by the respective defendants. The jury rendered verdicts only against the partnership, the Wissahickon Dairies, in the amount of $11,000 for the minor plaintiff and $1795.00 for the parent plaintiffs.

The defendants, Barfield and Fisher, trading as Wissahickon Dairies, were engaged in the milk business, delivering milk to private homes in and around the City of Philadelphia. In the conduct of their business, they operated a fleet of trucks. The operator of one of these trucks was Michael Palko. In the early morning of October 10, 1941, Palko was driving his truck on City Line Avenue, and the plaintiff who was riding with him soon fell asleep. The morning was very foggy and rainy. When the truck reached a point between 51st and 52nd Streets, Palko saw Coyle's truck parked "right up to the

curb" on the north side of City Line Avenue across the street from a lunch stand where the driver of the truck was "getting something to eat". He was then about ten or fifteen feet away from it and he testified that he turned the truck over to the left and applied the brakes but it was too late, as he was almost on top of it. He also testified "there were no lights on the truck. It was foggy and I couldn't see until I got on top of it and I caught the right front part of my truck against his left rear and it pushed the whole side of the truck in and pinned Alfred D'Alessandro in the cab." His car was traveling at that time about 15 or 20 miles an hour. He explained that he couldn't see much more than ten or fifteen feet. Under the circumstances, the negligence of the driver was properly conceded. The minor plaintiff, then 15 years of age, was seriously injured, receiving a compound fracture of the right leg, dislocated right hip leaving him with some impairment and a deformity, and also severe injuries to his head.

The minor plaintiff resided in the neighborhood of the dairy and occasionally had helped the appellant's drivers in making their early morning deliveries. There was no agreement for compensation but he received gratuities from the driver; they were customarily 75¢ or a dollar, and his breakfast. On the evening before the accident, this boy met Palko and made arrangements to help him distribute the milk the next morning. He appeared at the defendant's premises about 2:30 A.M. from where he went to the home of Palko to awaken him. When Palko arrived the boy helped him load the truck but did no other work on the premises. This was the first time he had worked with Palko. Fisher, one of the defendants, was on the platform watching the two load the truck and was talking to the driver while the boy sat beside him. It is clear that the latter was riding on the truck with the knowledge and (by inference) consent of this partner.

The sole question for our consideration is whether this minor plaintiff at the time of the accident was the

defendant's employee within the provisions of Section 302 (b) of the Workmen's Compensation Act of 1915, as re-enacted by Section 203 of the Act of June 21, 1939, P. L. 520, 77 PS Sec. 462. If he was, since neither party rejected the Act, the plaintiffs' exclusive remedy was a proceeding to recover compensation under the Act, and not by this common law action.

The court below held that "the minor plaintiff was not at that time a statutory employee of the defendants within the meaning of" that "section . . . and hence that the present action was properly brought in trespass. . . ." This decision was based upon our decision in *Rich Hill Coal Company v. Bashore,* 334 Pa. 449, 7 A. (2) 302.

The applicable section reads as follows: "An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employee or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employee or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employee". This was the language of Section 302(b) of the original Compensation Act of 1915 which was in force until 1937, when it was amended to read as follows: "An employer who permits a sub-contractor or employe to engage another, in whole or in part, in services furthering the employer's regular business entrusted to such employe or sub-contractor, shall be liable to the employe so engaged in the same manner and to the same extent as to his own employe, whether said injury occurred upon premises occupied or controlled by the employer or not, provided only that the injury occurred in the course of employment." In 1938 we declared this amendment unconstitutional in the *Rich Hill Coal Company* case (supra), because we felt then, as we feel now, that the General Assembly has no authority to enact a law making an employer liable to the employee of a sub-contractor or employee employer on premises remote from the

first employer's premises and over which he did not have the slightest control. Thereupon, the Act of 1939 now in force was passed re-enacting the language of the section first quoted.

This amended section clearly makes an assistant hired by an employee or contractor a "statutory employee" to whom the original employer is "liable . . . in the same manner and to the same extent as to his own employee," but only when the assistant is hired for the performance *upon the employer's premises* of a part of the employer's regular business entrusted to the original employee, not "on premises remote from first employer's premises and over which he did not have the slightest control." Any other interpretation, as the court below declared we pointed out in the *Rich Hill* case, "would bring the section (of 1915) within the ban of the constitution." In the instant case the evidence is clear that this accident occurred not upon the employer's premises, but at a point far distant from those premises and under such circumstances a statutory employee relationship does not exist and the section above cited cannot be invoked.

The appellant, however, insists that the "Rich Hill decision did not hold—and the question was not involved —that a statutory employment could not exist where the assistant came upon the employer's premises with his permission (thereby affording him control over the situation and the opportunity to repudiate it), worked thereon and also with the employer's knowledge worked off the premises in the course of his employment and in furtherance of the employer's business, and was injured while so engaged away from the premises." Conceding that this precise question was not involved in that decision, yet what we said there was based upon careful consideration of the section then involved, and its reasoning is persuasive with us when as now we must pass on the question under the similar section (in the new act) now involved. We said in the case cited that ". . . Section 203 of the Workmen's Compensation Act of *1915*

imposed on the general employer liability for injuries to those 'laborers or an assistant hired by an employee or contractor for the performance *upon such premises* (italics supplied) of a part of the employer's regular business entrusted to such employee or contractor.' In *Qualp v. James Stewart Co.,* 266 Pa. 502, 109 A. 780, this court held the applicable section of the Workmen's Compensation Act of 1915 related only to employees who were 'upon premises under his [the employer's] control.' In *Galliran v. Wark Co.,* 288 Pa. 443, 449, 136 A. 223, this court in construing section 203 of Article II of the 1915 Workmen's Compensation Act referred to this section as 'the most drastic interference with individual rights to be found in the act,' and that it 'forced liability upon parties who are not in privity of contract' . . . Under the old act, the 'employee' of the subcontractor could not recover from the principal contractor unless he was injured on the premises of the latter or under his control. This propinquity between the primary employer and the laborer made it possible for the employer to supervise the conditions of the laborer's employment and afforded some logical basis for holding that the former was liable to the latter for any personal injuries received on premises under the former's control. Such a holding marked the utmost limit this court can go in giving the statuses of 'employee' and 'employer', respectively, to two persons who in fact have no such contractual relation to each other. . . . We cannot judicially hold that when the people of this Commonwealth authorized the General Assembly to enact 'laws requiring the payment by employers, or employers and employees jointly, of reasonable compensation for injuries to employees arising in the course of their employment and for occupational diseases of employees,' they intended to confer or did confer upon the General Assembly an authority to enact a law making an employer liable to the employee of a subcontractor employer on premises remote from the first employer's premises and over which he did not have the slightest control."

There is no occasion to add much to what we there said. There *is* justification for holding an employer liable for injuries sustained by the employee of a subcontractor while that employee is *on the employer's premises.* His presence there gives the employer the power of control over him and over the conditions surrounding him. If he is doing his work in a reckless manner the employer can make him correct his conduct or order him off the premises. If he is working under dangerous conditions, the employer can correct the conditions or order him off the premises until the danger is averted. When such an employee is off the employer's premises this power of control over him and his surroundings no longer exists. For the legislature to attempt to make the employer liable to one who is in fact not an employee of his and who is not on the employer's premises at the time of the injury would go far beyond anything Article 3, Sec. 21 of the Constitution authorized when it declared: "The General Assembly may enact laws requiring the payment by employers, or employers and employes jointly, of reasonable compensation for injuries to employes arising in the course of their employment. . ."

The appellant relies largely upon the case of *DeNardo et ux. v. Seven Baker Bros.,* 102 Pa. Superior Ct. 347, 156 A. 725. That was an action of trespass for the wrongful death of plaintiff's son, William DeNardo, and the appellant corporation there sought to escape common law liability on the ground that the boy was its employee at the time he met his death and that, therefore, it was "within the sheltering protection of the Workmen's Compensation Act". The Superior Court accepted that view, saying: "The status of the boy as a statutory employe of defendant when he was helping Hendzel load the truck on the premises did not terminate when he left the premises and was working off the premises when he sustained the injuries from which he died. He was still in the course of his employment. It was only necessary that he should perform part of his

work on the premises in order to bring him within the above mentioned sections of the statute." The opinion offers no reasons in support of the conclusions stated and we can think of none outweighing those advanced by this court when it reached a contrary conclusion in the case of *Rich Hill Coal Co. v. Bashore,* supra, and therefore the just cited decision in the DeNardo case is not approved.

The judgments are affirmed.