Jerry GIRARDI
v.
PENNSYLVANIA POWER AND LIGHT
COMPANY
and
Lipsett, Inc., Defendants
and
Andershonis, Inc., Third-Party Defendant.
No. 21410.

United States District Court
E. D. Pennsylvania.
July 15, 1959.

814

B. Nathaniel Richter, Richter, Lord & Levy, Philadelphia, Pa., for plaintiff.

Lynn L. Detweiler, Swartz, Campbell & Henry, Philadelphia, Pa., for defendants.

George P. Williams, III, Philadelphia, Pa., for third-party defendant.

CLARY, District Judge.

This is an action by plaintiff, a resident of Pennsylvania, against defendant, Lipsett, Inc., a New York contracting firm, to recover damages for injuries sustained when he was dismantling equipment at an electric station in Williamsport, Pennsylvania. At the trial of the issue the Court submitted certain interrogatories to the Jury and on the basis of the answers the Trial Judge entered judgment in favor of the defendant on the ground that Lipsett, Inc. was the statutory employer of the plaintiff. The facts which form the basis of the action are as follows:

On November 5, 1954, Lipsett, Inc. contracted with Pennsylvania Power and Light Company "to purchase the equipment at [Pennsylvania Power and Light's] * * * Allentown, Kulpmont, Lykens and Williamsport Steam Electric Stations for a consideration of One Hundred Thousand Dollars, ($100,000), [and] * * * to remove and load same * * *." With reference to the work at the Williamsport plant the contract further stipulated:

"All the equipment in the main power plant building to be removed, that building and the two stacks demolished and all the debris disposed of to our satisfaction by April 1, 1956."

On August 29, 1955, after having begun work at Williamsport, Lipsett contracted with Andershonis, Inc. whereby the latter agreed, for a consideration, "to demolish the existing power plant and two smoke stacks * * *. All resultant debris to be removed * * * and the area graded to the satisfaction of the Pennsylvania Power and Light Company." In addition, Andershonis was to "prepare and outload all steel and iron and nonferrous (sic) and equipment generated from this plant * * *" for which it was paid at a given rate per ton. This material was shipped in accordance with instructions given by Lipsett.

Lipsett then withdrew completely from the plant, and Andershonis thereafter commenced operations. On November 4, 1955 plaintiff, an employee of Andershonis, was injured while dismantling equipment in the plant. He now seeks recovery from Lipsett on tort principles.

Lipsett interposed the defense that it was liable to plaintiff under the Pennsylvania Workmen's Compensation Act and hence not amenable to common-law suit. In support of this position Lipsett relied upon § 203 of the Act, Pa.Stat.Ann. tit. 77, § 52 (1952), which reads:

"An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employee or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employee or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe."

In reply, plaintiff insisted that the word "control" as used in § 203 referred to actual physical control; and that Lipsett's complete withdrawal prior to the entry of Andershonis therefore rendered the section inapplicable. The Court, being of the opinion that the correct test

of the so-called "statutory employer" status under § 203 was the "right of control" rather than "actual" control, submitted an interrogatory to the jury that posed the question whether defendant Lipsett had retained a right of control over the work done by Andershonis. This was answered in the affirmative; and judgment was entered for defendant on the theory that it was the statutory employer of the plaintiff and liable only under the Workmen's Compensation Law. In response to other interrogatories the jury found both Lipsett and Andershonis negligent and assessed damages in the sum of $100,000.

Plaintiff now moves the Court to vacate the judgment and enter judgment for plaintiff in the amount of $100,000 and in the alternative for a new trial.

■ The principal, although not the sole issue on this motion, is whether the Court correctly interpreted § 203 as requiring merely a right of control as opposed to actual physical control. If the Court is in error in that regard, plaintiff is entitled to judgment in the amount of $100,000 since Lipsett clearly did not exercise actual control. The statutory language must be the initial source of guidance. The pertinent portion reads "premises occupied by him or under his control". The use of the word "control" without qualification may lend support to plaintiff's argument that to be charged with liability under the provision one must actually be present and exercising control while the work is in progress. On the other hand, since "occupied" connotes physical presence, the disjunctive use of the word "control" may suggest that physical presence is not an invariable characteristic of the latter. This interpretation is not, of course, the only permissible one; for "occupied" may imply something in the nature of a proprietary interest as opposed to physical presence. If it does, "control" could be read as necessitating actual control consistently with the requirements imposed by the term "occupied". Lack of clarity in the statutory phrasing is further revealed by the failure to specify the time at which "control" must exist. The conclusion that it need obtain only when the subcontractor enters the premises is readily supported by the language of the Act. Adoption of this interpretation would render nugatory the lack of actual control thereafter. At best, the provision is somewhat nebulous on this point. The opposing parties seek to resolve the ambiguity by recourse to either "strict" or "liberal" interpretation. No aid is discernible in the use of these terms, for they are themselves of varying content. Compare 3 Corbin, Contracts § 533 (1951). The Court feels that the proper approach to the difficult task of interpretation involves a consideration of the purposes and philosophy of the statute together with whatever legislative history is available. With the insight derived from such an examination, a solution may be reached that is most nearly in accord with the intent of the legislature. See McDonald v. Levinson Steel Co., 1930, 302 Pa. 287, 292, 153 A. 424, 425; Gallivan v. Wark Co., 1927, 288 Pa. 443, 450, 136 A. 223, 225; Davis v. City of Philadelphia, 1943, 153 Pa.Super. 645, 649–650, 35 A.2d 77, 80.

The search for legislative history has been unproductive. Records of hearings, debates and committee reports are nonexistent; the only material for scrutiny is the legislative pattern that has developed over the years. The section, as originally enacted, was identical to that now in force. See Act of June 2, 1915, P.L. 736; Laws of Pa.1915, No. 338, Art. II, § 203, at 738. In 1937 it was amended to read in part:

"* * * whether said injury occurred upon premises occupied or controlled by the employer or not * * *."

Act of June 4, 1937, P.L. 1552; 2 Laws of Pa.1937, No. 323, Art. II, § 203, at 1555. This section was held unconstitutional in Rich Hill Coal Co. v. Bashore, 1939, 334 Pa. 449, 464–467, 7 A.2d 302, 310–311. The Court reasoned that while the former Act made it possible for the employer to supervise the conditions of the work, the section as amended "im-

poses responsibility upon an employer without giving him reciprocal authority." 334 Pa. at pages 464–465, 7 A.2d at page 310. As an outgrowth of this case the legislature enacted the present provision. Act of June 21, 1939, P.L.520, P.S. 77, § 52.

If the state legislature were treated as a single entity the difficulties in interpretation might be considerably fewer. Having been thwarted in its 1937 attempt to render "control" irrelevant, the argument might lie that the legislature intended the section now in force to merely satisfy the objections set forth in the Rich Hill decision. In other words, the legislature intended to retain as much of the extremely broad coverage attempted in the 1937 Act as was constitutionally possible. Since a right of control would arm the employer with the authority deemed necessary in the Rich Hill case, this would presumably be the preferred criterion. The infirmity in this approach stems from the fact that the composition of the General Assembly in 1939 differed from that of 1937. To thus base decision upon a projection of the intent of the earlier legislature would appear unwarranted.

█ Fortunately, more substantial aid is found in a consideration of the purposes and philosophy of the Workmen's Compensation Act. Viewed in its entirety it is essentially a humanitarian measure motivated by a desire to afford workmen a modicum of protection against the economic consequences of industrial accidents. These accidents and the economic privations emanating from them represent an unavoidable concomitant of an industrial society. The workman is not normally in a position to shoulder the burden as it affects himself and his family, and resort to the remedies of the common law revealed glaring inadequacies in their efficacy as a protective instrument. Since the genesis of the problem is the industrial type economy, it was thought appropriate that the burden be borne by industry, and perhaps ultimately by the consuming public. Such a price is not too high to pay for the supposed benefits derived from modern industry. The Act was intended to accomplish this objective of cloaking the workman with a protective mantle by placing the risk of loss in the first instance upon the direct recipient of the worker's efforts—industry. See 1 Skinner, Pennsylvania Workmen's Compensation Law 14–35 (4th Ed. 1947), particularly at 15–17, 19–20, 22, 25.

Cognizance of the over-all purpose of the Act suggests the interpretation favored by the Court at trial. Distinctions cannot be drawn between industrial accidents so far as their consequences and the corresponding need for protection of the workmen involved are concerned. From this it would seem to follow that the legislative purpose can, in full measure, best be realized by an inclusive interpretation. Of course, the language of the Act circumscribes the area of permissive interpretation; but, as noted previously, the terminology of the provision in question may quite reasonably be read to fit the instant case.

This view is further borne out by the motivation behind § 203. The Supreme Court of Pennsylvania has said that the section was intended to insure that liability for compensation would rest with a responsible party. It was believed more probable that the prime contractor would meet this description than subcontractors since the owner will insist upon financial responsibility of the person with whom he deals before letting the original contract.

"* * * The act intended to throw the burden on the man who secured the original contract * * * to the end that employees of any degree doing work thereunder might always be protected in compensation claims." Qualp v. James Stewart Co., 1920, 266 Pa. 502, 509, 109 A. 780, 782.

Once again, implementation of the policy would seem to call for inclusion and application of the section wherever possible; for the difference between actual control and right of control bears no-

discernible relevance to the thrust of the legislative policy determination.

And indeed, holding one liable under the Act where he has retained the right of control is certainly not without justification.

" * * * His presence there gives the employer the power of control over him and over the conditions surrounding him. If he is doing his work in a reckless manner the employer can make him correct his conduct or order him off the premises. If he is working under dangerous conditions, the employer can correct the conditions or order him off the premises until the danger is averted. * * *" D'Alessandro v. Barfield, 1944, 348 Pa. 328, 334, 35 A.2d 412, 414.

The crucial feature is the ability of the one charged to take precautions against possible injuries. The absence of authority which the Supreme Court found objectionable in the Rich Hill case is satisfied by retention of a right of control. The fact that an employer may choose not to utilize the authority retained certainly does not in any way diminish the justification of charging him with liability for injury, nor is it a factor of constitutional significance.

▮▮ Plaintiff's case is an appealing one. He has suffered severe injuries, and it may be that the recovery in a common-law action would recompense him more adequately than a compensation award. However, the effect of accepting plaintiff's contention would not be limited to the instant case, but rather would redound to the detriment of other workmen similarly situated. Exclusion of plaintiff from the Act's protection necessitates exclusion of others as well. The short-sightedness of thus endangering the legislative scheme by predicating a rule upon the appealing features of a single case is obvious and to be shunned. Cf. Byrd v. Blue Ridge Cooperative, Inc., 1958, 356 U.S. 525, 555–556, 78 S.Ct. 893, 2 L.Ed.2d 953 (Frankfurter, J. dissenting). Accordingly, the Court must conclude that retention of a "right of control" satisfies the statutory requisites for liability under the Act. Plaintiff's reliance on Boettger v. Babcock & Wilcox Co., 3 Cir., 1957, 242 F.2d 455, is misplaced; for the question now before the Court was not involved and hence not decided there.

▮ But this does not dispose of the case, for plaintiff has another string to his bow. He next contends, citing McDonald v. Levinson Steel Co., 1930, 302 Pa. 287, 153 A. 424, that § 203 may be invoked only where there is a principal contract upon which a subcontract depends. Stated another way, one who is an owner or is in the position of an owner cannot be charged as an employer. The rule as stated is unquestionably borne out by the McDonald case. There the defendant was erecting a shed upon ground he held under a lease. Although not obliged by terms of the lease to construct the shed, it was to become the property of the lessor at the conclusion of the term. Defendant contracted out portions of the work; and subsequently an employee of one of the contractors was injured. The Court held that since there was no principal contract between defendant and the lessor, he was in the position of an owner so far as the erection of the shed was concerned, and hence not within the coverage of § 203.

Plaintiff seeks to turn the principle of the McDonald case to his advantage by insisting that defendant Lipsett's contract with Pennsylvania Power and Light Company was a purchase and sale rather than merely a demolition contract. Since it was a sale, the argument proceeds, there is no prime contract upon which liability under § 203 may be premised.

▮ It is not clear from a reading of the Lipsett-Pennsylvania Power and Light contract that the building at Williamsport was purchased in addition to the equipment therein. However, this is a point of no consequence. In assessing the effect of the contract its real nature rather than its form will be determinative. See Capozzoli v. Stone & Webster Engineering Corp., 1945, 352 Pa. 183,

186–187, 42 A.2d 524, 525. In the instant case, regardless of the technical form of the contract, Lipsett was obligated thereby to demolish the building and stacks, remove the equipment, and dispose of the resulting debris to the satisfaction of the Power Company. In this sense it was a demolition contract even if also a sale. This much was conceded by plaintiff's counsel on oral argument. There was, therefore, an obligation on the part of Lipsett which was subsequently subcontracted to plaintiff's immediate employer Andershonis, Inc. In the McDonald case the Court emphasized the fact that the lessee was under no compulsion to erect the shed, 302 Pa. at page 298, 153 A. at page 428; in the instant case there was compulsion, and § 203 is applicable. Although not factually identical, Frankel v. International Scrap Iron & Metal Co., D.C.E.D.Pa.1957, 157 F.Supp. 709, is in accord with the proffered analysis.

Plaintiff also raises several subsidiary questions on this motion. These were not pressed either in his brief or at oral argument; and no discussion is deemed necessary to indicate their lack of cogency. Plaintiff's motions, therefore, will be denied.