Opinion by
Judge Blatt,
Stephen C. Jacobson was employed on November 9, 1971 as a sales representative of Stephen Gould Paper Company (Gould). He had been so employed for about fifteen years and his work consisted primarily of selling industrial packaging. He had no definite territory but most of his customers were located within a 25 mile radius of Philadelphia. Some, however, were as far away as Long Island, New York. During the first seven or eight years of his employment with Gould, Jacobson drove his own vehicle to call upon the various customers whom he was scheduled to see. After that time, however, his vision gradually deteriorated until eventually he became totally blind, and, he came to rely on others to drive him on his rounds. Occasionally members of his own family did such driving for him, but when his lack of vision reached the point where he could no longer do any driving at all, he found it necessary to hire regular drivers. It was in that capacity that he obtained the services of Charles Rickies, who responded to an advertisement placed by Jacobson in a local newspaper. The two entered into an arrangement whereby Rickies would drive Jacobson to meet his customers on an average of about four hours per day, three or four days per week. Jacobson would usually indicate to Rickies one day in advance whether or not he would need his services the day following, and Rickies was regularly paid $1.80 per hour in cash by Jacobson. Directions as to where Rickies was to go were usually supplied by Jacobson who also supplied a car which he personally leased. At some times, *507 however, it appeared that Rickies got directions from someone in Gould’s employ other than Jacobson.
Jacobson himself worked on a commission basis. He normally set up his own schedule of daily appointments, but Gould’s sales manager testified that he reserved the right to tell Jacobson where and when to go along his route. The sales manager testified that he occasionally would set up an appointment for Jacobson to meet a customer or he would ask Jacobson to pick up or deliver a sample.
On November 9, 1971 Jacobson, with Rickies driving him, picked up a sample which one of his customers wanted redesigned. He was returning it to Gould’s Philadelphia office when his automobile was involved in an accident in which Rickies suffered severe injuries. Rickies then sought benefits from Gould under the Workmen’s Compensation Act, and, after a hearing, a referee concluded as a matter of law that Gould was not the employer of Rickies under the Act. The claim, therefore, was denied. On appeal, the Workmen’s Compensation Appeal Board reversed without taking additional evidence and ordered the payment of benefits to Rickies. Gould now appeals to this Court, and we must hold, under the particular facts of this case, that Rickies is entitled to benefits.
The narrow issue before us involves the question of whether or not an employer-employee relationship existed between Rickies and Gould so as to render Rickies eligible for workmen’s compensation benefits.[1] The referee concluded that Gould was not the employer of Rickies and that Rickies was not acting under Gould’s supervision or control at the time of the accident. The Board reversed on the basis that Rickies was a subservant of Gould (through Jacobson) and thereby was Gould’s employee within the meaning of the Act.
*508 It is true that the Board’s opinion listed its finding of Rickies’ alleged subservant status as a “Finding of Fact,” yet, as both parties have correctly noted such a determination is actually a conclusion of law, and the Board’s scope of review is, of course, broad enough to enable it to consider questions of law. See Universal Cyclops Steel Corporation v. Krawezynski, 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973). Gould, nevertheless, argues that the Board’s opinion indicates that it made factual determinations in reaching its conclusion, even though they were not formally stated as findings of fact, and Gould asserts, therefore, that the Board exceeded the scope of its review under Cyclops because it made such factual determinations without taking additional evidence.
We have carefully reviewed the record and conclude that, to whatever extent the Board assumed certain facts not explicitly found by the referee, it was fully justified in so doing by the obvious implications of the unrebutted testimony of Gould’s sales manager.
Our own scope of review is limited here, of course, to a determination as to whether or not there was a capricious disregard of competent evidence, a violation of constitutional rights has occurred, or an error of law was committed. Cole Steel Equipment Corporation v. Workmen’s Compensation Appeal Board, 14 Pa. Commonwealth Ct. 454, 322 A.2d 743 (1974). The rules for determining the existence of the relationship of employer and employee are the same as those at common law for ascertaining the relationship of master and servant, and, where the facts are undisputed, the question of whether or not the relationship existed is one of law. Harris v. Seiavitch, 336 Pa. 294, 9 A.2d 375 (1939). Moreover, the most important factor in determining the existence of such a relationship is the existence of the control or of the right to control the work to be done and the manner of its performance. Barr v. B & B Camper Sales, 7 Pa. *509 Commonwealth. Ct. 323, 300 A.2d 304 (1973). And the question is not whether the employer has actually exercised control, but whether or not he has the right to control. Fanning v. Apawana Golf Club, 169 Pa. Superior Ct. 180, 82 A.2d 584 (1951).
The referee here was well supported in finding as he did that Rickies was acting at the time of the accident under Jacobson’s supervision. It is clear that Jacobson was actually providing the specific directions as to when and where Rickies should drive on that day. That fact does not foreclose the possibility, however, that Gould may have also reserved the right to control Rickies’ activities so as to have made itself Rickies’ employer. On this issue the testimony of Eliot Kay, the sales manager, was unequivocal and uncontradicted. On direct examination his testimony was as follows:
“Q Mr. Kay, as sales manager of Steven Gould did you have the right to tell Mr. Jacobson where and when to go on his salesman’s route?
“A Yes.
“Q .As sales manager of Steven Gould did you have the right to tell his driver where and when to go in connection with his salesmen’s route?
“A Yes.
“Q Did that continue from the time he became blind up until the time — today ?
“A Yes.
“Q Was that so When Charles Rickies was the driver for Mr. Jacobson in November of 1971?
“A Yes.”
Furthermore, on cross-examination Kay re-emphasized the extent of control which he felt that he could exercise over Rickies:
“Q And when you say that you had the right to direct Jacobson’s driver where to go you are saying this was only because you were able to direct Jacobson where to go, isn’t that correct?
*510 “A If there was anything that had to be taken care of regarding Jacobson’s work I could tell his driver where to go and get something and where to pick something up.
“Q For Jacobson?
“A Yes, it had to do with Jacobson’s work, his assignments. He might have samples, artwork, print plates and so forth that might have to be picked up and, therefore, for Jacobson’s assignment I could tell a driver where to go.
“Q But you are actually telling Jacobson where to go?
“A I could do it with Jacobson or I could do it directly.
“Q Did you ever communicate in any way with Rickies ?
“A Do you mean business communication?
“Q Business communication?
“A I would say yes.
“Q Well, do you recall that you did ?
“A I recall times when I might have spoken to Rickies about going to an airport to pick someone up regarding something that had to be done, someone coming in from out of town.”
Gould’s right to control was thus established beyond question by its own sales manager’s admission, and this is the key element in determining whether or not an employer-employee relationship has been established. We are not persuaded by the fact that Jacobson did the actual hiring, for the right to control is the more crucial issue. Nor do we find any controlling significance in the fact that Rickies was paid by Jacobson. An employer’s liability to meet a claim for compensation under the Act is not to be conditioned upon his payment of wages or his obligation to pay wages. Fanning, supra.
Furthermore, the record unquestionably establishes that Jacobson had at least the implied authority of Gould *511 to obtain a driver. Use of a car was necessary for the performance of his duties as a salesman and it was obvious to Gould that Jacobson could no longer continue his job without a driver after his vision had deteriorated to the point where he himself could not drive. A servant may be authorized to hire another to assist him in the performance of his work and that other can vicariously effect the superior master. Waggaman v. General Finance Co. of Philadelphia, Pa., Inc., 116 F. 2d 254 (3rd Cir. 1940). Such authority may be implied from the nature of the work to be performed, from the general course of conducting the business of the master, or from the acquiescence, with knowledge, by the employer in a continuous or customary use of an assistant by the employee. 53 Am. Jur. 2d Master and Servant §414 (1970). If an agent with authority either expressly or impliedly given employs help for the benefit of his principal’s business, he creates the relationship of employer and employee between such help and his principal. Busch v. Bientzle, 119 Pa. Superior Ct. 559, 181 A. 520 (1935). We believe that where as here the hiring of an assistant became absolutely essential for the continuation of an employee’s employment, and where as here the original employer must have recognized that necessity, and where as here the original employer also retained the right to control the work of the assistant, so employed, that assistant is an employee of the original employer under the Act.
We are deciding here that Rickies was an employee of Gould within the meaning of Section 104 of the Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §22 which defines employee to be synonymous with servant, and one who is an employee under that Section can, of course, recover benefits whether he performs his duties on or off the employer’s premises. We see no conflict, therefore, between our holding here and the decisions interpreting the “on the premises” requirement under the statutory employee concept contained in Section 203 of the Act, 77 *512 P.S. §52. See for example, D’Alessandro v. Barfield, 348 Pa. 328, 35 A.2d 412 (1944) and Fishel v. Sears, Roebuck & Co., 6 Pa. Commonwealth Ct. 384, 295 A.2d 345 (1972).
The transcript here indicates that several exhibits including medical bills were admitted into the record for the purpose of showing the amount of benefits to which Rickies would be entitled, should he be found eligible. There even appears to have been some sort of stipulation between the parties as to the proper amount. Unfortunately, however, neither the exhibits nor the stipulation can be found in the official record'transmitted to this Court. We must, therefore, remand the record to the Board for the limited purpose of entering the appropriate material into the record and issuing an order granting benefits to Rickies in the appropriate amounts.
We, therefore, issue the following
Order
Now, This 6th day of June, 1975, the order of the Board dated August 8, 1974 granting benefits to the claimant is hereby affirmed and the record is remanded to the Workmen’s Compensation Appeal Board for determination of the proper amount of compensation to which the claimant is entitled consistent with this opinion.

. Workmen’s Compensation Act, Act of June 2, 1915, P.L. 736, as amended, Section 103-104, 77 P.S. §21-22.