City of New Castle, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Harry DeCarbo, Respondents.

Argued October 8, 1981, before President Judge CRUMLISH, JR. and Judges BLATT and CRAIG, sitting as a panel of three.

*Robert W. Murdoch, Jones, Gregg, Creehan & Gerace,* for petitioner.

*Thomas M. Piccione, Gamble, Verterano, Mojock, Piccione & Green,* for respondents.

OPINION BY JUDGE BLATT, February 25, 1982:

The petitioner, the City of New Castle, appeals an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's determination that the claimant, Harry DeCarbo, suffered a work-related heart attack which was compensable under Section 301(c) of The Pennsylvania Workmen's Compensation Act.[1]

The claimant had been employed by the petitioner as a fireman for approximately thirteen years and on October 17, 1977 at 4:40 a.m. he was on duty and was aroused out of his sleep by a fire alarm. The City

_____

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411. The Board also affirmed the referee's finding that the claimant was totally and permanently disabled beginning on October 17, 1977 and continuing indefinitely.

concedes in its brief, that the claimant, as driver of the fire truck, had to get out of bed at once and run to the truck to "heat up" the radio in order to determine where the fire was. He and a fellow fireman then responded to the alarm which proved to be false, and during the return trip to the station he suffered chest pains which he reported to the fire department dispatcher. At approximately 6:00 p.m. that day, the claimant's chest pain recurred and he was admitted to Jameson Hospital for treatment in the coronary care unit where blood tests indicated evidence of a heart attack. He remained in the hospital until October 24, 1977 but approximately three hours after being discharged he began to experience chest pains again and he became unconscious. He was again taken to the hospital where he remained until November 22, 1977 when he was transferred to another hospital for heart catheterization. As a result of that test, he was sent to a Houston, Texas hospital to undergo by-pass surgery. The referee found, the Board agreed, that the claimant suffered a heart attack on October 17, 1977, as a result of an "injury incurred in the course of his employment which was causally related to [his] employment" as a fireman and that he was totally and permanently disabled since the date of the injury.

In a workmen's compensation case, the claimant has the burden of proving that his injury arose in the course of employment, and that it was causally connected with his work. *Workmen's Compensation Appeal Board v. Bowen*, 26 Pa. Commonwealth Ct. 593, 364 A.2d 1387 (1976). Moreover, where the causal connection between the injury and the disability is not obvious, unequivocal medical testimony is required. *Elliot v. Workmen's Compensation Appeal Board*, 57 Pa. Commonwealth Ct. 70, 425 A.2d 885 (1981). And where, as here, the party with the burden of proof prevailed before the referee and the Board did not

take additional evidence, our scope of review is limited to a determination of whether or not errors of law were committed or necessary findings of fact made by the referee were unsupported by substantial evidence. *Rowan v. Workmen's Compensation Appeal Board*, 58 Pa. Commonwealth Ct. 56, 426 A.2d 1304 (1981).

The petitioner contends that the Board erred in affirming the referee's decision because (1) the claimant did not suffer a work-related injury, (2) the claimant was not totally and permanently disabled as a result of a work-related injury, and (3) the medical expenses and travel expenses for the heart catheterization and subsequent open-heart surgery were not a direct result of a work-related injury. Inasmuch as the petitioner chose not to present medical testimony below we must, therefore, examine the testimony of the claimant's physician in order to determine whether or not the claimant actually did carry his burden of proof as to the three questions raised by the petitioner.

We believe the petitioner's first contention to be controlled by our decision in *Wilkes-Barre v. Workmen's Compensation Appeal Board*, 54 Pa. Commonwealth Ct. 230, 420 A.2d 795 (1980), where the claimant, who was also a city fireman, suffered two separate heart attacks while at home — in one instance three days after working, and in another, approximately six days after working. In upholding the referee's and Board's award there, we recognized "that the mere absence of the magic words 'his work caused his heart attack' " should not preclude the recovery of benefits. *Id.* at 234, 420 A.2d at 796. We concluded, therefore, that medical testimony need not be given with unqualified certainty in heart attack cases but rather that such medical evidence of record "*taken as a whole*" must be of an unequivocal nature. *Id.* at 234, 420 A.2d at 798 (emphasis added). And our close examination of the record here when read in its *entirety*

and when the claimant is given the benefit of all inferences deducible therefrom, discloses that the medical testimony of the claimant's doctor does *reasonably*[2] establish that the three chest-pain episodes occurring on October 17 and 24, 1977 were actually all in one chain of events arising from the claimant's performance of his duties as a fireman for the petitioner. For example, the claimant's physician, Dr. Mohamad O. Taftaf, M.D., testified by deposition that the starting point of the claimant's heart attack was at 4:40 a.m. on October 17, 1977, and that the

---

[2] Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. *Workmen's Compensation Appeal Board v. Republic Steel Corp.*, 26 Pa. Commonwealth Ct. 285, 364 A.2d 513 (1976). The medical expert must testify that in his professional opinion, the result in question came from the cause alleged. *Halaski v. Hilton Hotel*, 487 Pa. 313, 409 A.2d 367 (1979). Some relevant passages from Dr. Taftaf's deposition are as follows:

Q: [I]s it your opinion that the three episodes which would be 10-17 in the evening — if that's correct — and then either on October 24th or October 27th — the three episodes were one chain of events all related to the first episode. Is that your opinion?

A: Yes.

Q: [D]o you have an opinion based upon reasonable medical certainty as to the cause of the second incident on October 17th and the cause of the incident on October 24th? Do you have an opinion as to those two causes?

A: I do. Somebody can have a heart attack — he doesn't necessarily have to have pain continuously. He might have pain and that pain may subside and he thinks he is better and he do [sic] a little bit of activity and he just reactivates his chest pain and have heart damage. Some people can even have a heart attack without even pain completely, but I think the whole pain — he told me he never had chest pains before. The starting point was 4:40 a.m. that day when he started to have pains and *this was the starting point in his having a heart attack.* (Emphasis added.)

three episodes were, in his opinion, in one chain of events all related to the first episode. And, like the physician in *Wilkes-Barre*, he further opined that the claimant's employment as a fireman could and did, because of the stressful situations involved in such work, generally accelerate his coronary disease. Specifically, Dr. Taftaf testified that the claimant's sudden awakening on October 17, 1977, from a state of deep sleep to a state of maximum emotional and physical stress, definitely precipitated his heart problem. The fact that Dr. Taftaf used the word "probably" at different points during his testimony does not necessarily render otherwise unequivocal testimony equivocal. *Id.* In short, "the claimant should not be denied benefits because of his physician's choice of words" or degree of familiarity with the English language. *Id.* at 234, 420 A.2d 798. We believe, therefore, that substantial evidence existed upon which the referee and the Board could reasonably conclude that the claimant was totally and permanently disabled as a result of a work-related injury.

Concerning the petitioner's second contention that the claimant was not totally and permanently disabled, some relevant passages from Dr. Taftaf's deposition are as follows:

Q: Doctor, in your opinon would you please state whether or not Harry DeCarbo is disabled?

A: Harry DeCarbo cannot go back to his fire work duties, in my opinion, but he might be able to do some kind of office type work.

Q: If I understand you correctly, would it be fair to say that he can't go back to the type of emotional strain that he had previously done?

A: No, he cannot.

Q: Some sort of desk job or sedementary [sic] job would be more suitable?

A: Yes, definitely, in my opinion, because he was living on almost one coronary artery ... which was bypassed and a portion of his heart was resected, so I would rather see him do less work.

Q: For what period of time has Harry DeCarbo been totally disabled and unable to perform any work from the time of his accident to the first?

A: Definitely after he had his heart attack — definitely I would consider him disabled at the time he had the chest pain and usually after a heart attack....

And, of course, because the petitioner then failed to prove that other work which the claimant could do was available, the claimant must be compensated for total disability. *United States Steel Corp. v. Workmen's Compensation Appeal Board*, 58 Pa. Commonwealth Ct. 183, 427 A.2d 727 (1981).

As to the petitioner's third contention, we believe that because the claimant has established that he suffered an injury during the course of his employment and has proved that he is totally and permanently disabled thereby, he is entitled to the reasonable and necessary medical costs and travel expenses which he incurred. *See generally Hudack v. Workmen's Compensation Appeal Board*, 32 Pa. Commonwealth Ct. 508, 379 A.2d 1074 (1977); *Chamberlain Corp. v. Workmen's Compensation Appeal Board*, 9 Pa. Commonwealth Ct. 486, 308 A.2d 177 (1973).

We will, therefore, affirm the order of the Board.

ORDER

AND, Now, this 25th day of February, 1982, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

IT IS FURTHER ORDERED that judgment be entered in favor of the claimant, Harry DeCarbo, and against the petitioner, City of New Castle, at the rate of $187.36 per week beginning October 17, 1977 and into the future until such time as disability terminates or changes in nature or extent all within the meaning of the Workmen's Compensation Act, as amended. Additionally it is ordered that the City of New Castle shall pay the following medical bills and costs:

### DOCTORS

| | |
|---|---|
| L. F. Schumacker, Jr., M.D. | $ 690.00 |
| Gerald M. Lawrie, M.D. | 500.00 |
| Michael E. DeBakey, M.D. | 2,505.00 |
| James E. Harrell, M.D. | 92.00 |
| Manus J. O'Donnell, M.D. | 465.00 |
| G. H. Diehl, M.D. | 20.00 |
| Bashara & Malvar (includes office visits) | 192.00 |
| Kamal Wadhwa, M.D. | 290.00 |

### HOSPITALS

| | |
|---|---|
| The Methodist Hospital | $9,465.80 |
| Allegheny General Hospital | 912.95 |
| Jameson Memorial Hospital | 3,753.75 |
| St. Francis Hospital | 30.00 |

### MEDICATION

| | |
|---|---|
| Union Prescription Center | $ 310.98 |

### HOTEL ACCOMMODATIONS AND AIR LINE TICKETS

| | |
|---|---|
| Air Line Tickets | $ 964.00 |
| Hotel Accommodations | 631.60 |

Counsel fees in the amount of twenty (20%) percent of all compensation due is payable to, and the City of New Castle is directed and ordered to deduct the same and mail to: Thomas M. Piccone, Esquire, 325 East Washington Street, New Castle, PA 16101.

Judge PALLADINO did not participate in the decision in this case.