606 A.2d 571

Lloyd HAINES, Petitioner,

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (CLEARFIELD COUNTY and Manufacturer's Alliance Ins.), Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 1991.

Decided March 18, 1992.

438

Thomas Morgan, for petitioner.

Ralph J. Trofino, for respondents.

Before PALLADINO and SMITH, JJ., and BARRY, Senior Judge.

PALLADINO, Judge.

Lloyd Haines (Claimant) appeals the February 26, 1991 order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision denying benefits to Claimant. We affirm the Board's order.

On November 17, 1988, Claimant filed a workmen's compensation claim petition against Clearfield County, which alleged that Claimant injured his left elbow on November 24, 1987, while Claimant was helping a Clearfield County deputy sheriff subdue a prisoner who was trying to escape. Clearfield County filed an answer opposing the claim petition, and the case was heard before a workmen's compensation referee. By agreement of the parties, the referee bifurcated the case to determine first whether Claimant and Clearfield County were in an employee/employer relation-

ship with respect to each other. In her decision of October 12, 1989, the referee concluded that Claimant was not eligible for workmen's compensation benefits from Clearfield County because Claimant was not in an employment relationship with Clearfield County.

Claimant timely appealed the referee's adverse decision to the Board which did not take additional evidence. On February 26, 1991, the Board issued an opinion and order affirming the referee's decision on the grounds that the referee's fact-findings were supported by substantial evidence of record and the referee's conclusions of law were not erroneous. *See, e.g., Czap v. Workmen's Compensation Appeal Board (Gunton Corp.)*, 137 Pa.Commonwealth Ct. 612, 587 A.2d 49 (1991) (Board's scope of review). Claimant now appeals to the commonwealth court from the Board's February 26 order denying workmen's compensation benefits to Claimant.

█ Where, as here, the Board has not taken additional evidence, our scope of appellate review is limited to determining whether crucial fact-findings of the referee were unsupported by substantial evidence of record, whether an error of law was committed, or whether constitutional rights were violated. *Czap; Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988). Claimant's appeal raises three issues: (1) whether substantial evidence of record supports the referee's fact-finding 12 concerning Claimant's November 24, 1987 participation in the subduing of a prisoner; (2) whether the Board erred as a matter of law by not reversing the referee's legal conclusions that the testimony of witnesses Michael Mowery and Joan Haines–Bergum as well as the criminal complaint filed against the prisoner were irrelevant to a determination of whether Claimant had entered into an employment relationship with Clearfield County on November 24, 1987, and (3) whether the Board erred as a matter of law by agreeing with the referee's legal conclusion that Claimant's November 24, 1987 participation in the subduing of a prisoner

failed to establish Claimant's employment relationship with Clearfield County.

█ To be eligible for workmen's compensation benefits, Claimant must first prove that he was injured while in an employee-employer relationship. *Morley v. Workmen's Compensation Appeal Board,* 49 Pa.Commonwealth Ct. 98, 410 A.2d 110 (1980); *Heilner v. Workmen's Compensation Appeal Board,* 38 Pa.Commonwealth Ct. 494, 393 A.2d 1085 (1978); *B & B Camper Sales v. Workmen's Compensation Appeal Board,* 7 Pa.Commonwealth Ct. 323, 300 A.2d 304 (1973). The existence of an employment relationship is a question of law which must be resolved on the particular facts of each case. *Northern Central Bank and Trust Co. v. Workmen's Compensation Appeal Board (Kontz),* 88 Pa.Commonwealth Ct. 277, 489 A.2d 274 (1985); *Jay Lines, Inc. v. Workmen's Compensation Appeal Board,* 66 Pa.Commonwealth Ct. 299, 443 A.2d 1370 (1982); *Workmen's Compensation Appeal Board v. American Mutual Liability Insurance Co.,* 19 Pa.Commonwealth Ct. 502, 339 A.2d 183 (1975). "The rules for determining the existence of the relationship of employer and employee are the same as those at common law for ascertaining the relationship of master and servant." *American Mutual Liability Insurance Co.,* 19 Pa.Commonwealth Ct. at 506, 339 A.2d at 186; *accord Byrne v. Pittsburgh Brewing Co.,* 259 Pa. 357, 103 A. 53 (1918).

Although the general rule is that an employment relationship cannot be formed without a person's or entity's (here, Clearfield County's) express or implied consent to the relationship, some exceptions to the rule are recognized. *Byrne; Morley; American Mutual Insurance Co.* Claimant argues that his November 24, 1987 participation in the subduing of a prisoner brings him within the common-law emergency exception to the rule for formation of employment relationships.

The emergency exception was most recently analyzed by the commonwealth court in *Morley* where the court explained that when, during an emergency, an employee en-

gages an assistant to help accomplish work for the employer which the employee cannot perform on his own, an employment relationship between the employer and the assistant is created within the meaning of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.[1] *See also Byrne* (for purposes of tort action, employment relationship created by employee's engaging of assistant during an emergency). Consequently, there are two elements to the emergency exception which Claimant must prove in order to establish the existence of an employment relationship with Clearfield County on November 24, 1987.

First, Claimant must prove the occurrence of an emergency. The Supreme Court of Pennsylvania has defined an emergency as "a sudden or unexpected event which creates a temporarily dangerous condition usually necessitating immediate or quick action." *Scaccia v. Old Forge Borough,* 373 Pa. 161, 163, 94 A.2d 563, 564 (1953), *quoted in Morley.*

▪ With respect to the occurrence of an emergency, the referee made the following pertinent fact-findings which Claimant does not contest on appeal:

3. On November 24, 1987 an incident occurred in Lawrence Twp., Clearfield County, Pa. as Deputy Sheriff Stephen Evanko was transporting a hand-cuffed prisoner ... to the Clearfield County jail. [Tr. 4–6]

....

5. The claimant, Lloyd C. Haines, witnessed Deputy Evanko chasing, on foot, prisoner.... Deputy Evanko tackled the prisoner, threw him to the ground, following which they were involved in a scuffle resulting in the prisoner kicking and striking the Deputy. [Tr. 4–10]

6. The claimant, Lloyd C. Haines, ran to the area of the scuffle, asked Deputy Evanko if he needed anything, to

---

1. Contrary to the misimpression given by the Board's February 26, 1991 opinion and order, sections 104 and 601 of The Pennsylvania Workmen's Compensation Act, *as amended,* 77 P.S. §§ 22, 22b, 22c, 22d, and 1031, do not contain an exhaustive listing of the individuals who qualify as employees for the purposes of receiving workmen's compensation benefits. *Morley.*

which the Deputy responded "he could use a hand." The claimant assisted the Deputy in restraining the prisoner by picking up prisoner's feet and placing them under his arms. [Tr. 9–10]

. . . .

10. The testimony of the claimant is accepted as credible in so far as his description of the incident and his activities as a result thereof.

. . . .

14. The parties hereto have stipulated that an incident did, in fact, take place on November 24, 1987; and that the incident was of a serious nature.

Referee's October 12, 1989 Decision at 2–3 (the ellipses in above-quoted fact-findings 3 and 5 signify omissions of the prisoner's name; the added references to the portions of the transcript which support the quoted fact-findings signify the transcript of the January 17, 1989 hearing before the referee). We deem these determinations of the referee to be tantamount to a finding that, at the time of Claimant's participation in the November 24 incident, an emergency was occasioned by the prisoner's renewed attempt to escape from the deputy sheriff.[2]

■ Second, Claimant must prove that his services were solicited on behalf of the employer. An individual who spontaneously injects himself into an emergency situation constitutes a volunteer who is not eligible for workmen's compensation benefits whereas an individual who responds to a request for emergency assistance on behalf of an employer constitutes an employee who is eligible for workmen's compensation benefits. *See, e.g., Morley; Schreckengost v. Gospel Tabernacle,* 188 Pa.Superior Ct. 652, 149

---

2. We also hold that fact-findings 3, 5, and 6 are supported by substantial evidence of record because they are consistent with Claimant's testimony at the January 17, 1989 hearing before the referee. Tr. 4–10. *See, e.g., Krumins Roofing & Siding v. Workmen's Compensation Appeal Board (Libby and State Workmen's Insurance Fund),* 133 Pa.Commonwealth Ct. 211, 575 A.2d 656 (1990); *City of New Castle v. Workmen's Compensation Appeal Board,* 65 Pa.Commonwealth Ct. 25, 441 A.2d 803 (1982).

A.2d 542 (1959);  *Fekete v. Lehigh & Wilkes–Barre Coal Co.*, 71 Pa.Superior Ct. 231 (1919);  *see also Byrne.*

■  Regarding whether Claimant's participation in the November 24, 1987 incident was triggered by Claimant's spontaneous rendering of assistance to the deputy sheriff or was triggered by the deputy sheriff's solicitation of Claimant's assistance, the referee made the following pertinent fact-findings:

> 6.  The claimant, Lloyd C. Haines, ran to the area of the scuffle, asked Deputy Evanko if he needed anything, to which the Deputy responded "he could use a hand."  The claimant assisted the Deputy in restraining the prisoner by picking up prisoner's feet and placing them under his arms.  [Tr. 9–10]
>
> . . . .
>
> 11.  The defendant [Clearfield County] presented testimony of Deputy Stephen A. Evanko who recalls having requested a woman in the area to call 911, and recalls Mr. Haines coming up behind him, asking if he could help, or if there was anything he could do to help.  Deputy Evanko said "it probably wouldn't hurt, something to that effect."  [Tr. 32–33, 35]
>
> 12.  Deputy Evanko did not offer to pay the claimant for his assistance, *did not initiate a request for assistance,* and did not deputize the claimant.  [Tr. 41]
>
> 13.  The testimony of Deputy Evanko is accepted as credible.

Referee's October 12, 1989 Decision at 3 (emphasis added in fact-finding 12;  the added references to the portions of the transcript which support the quoted fact-findings signify the transcript of the January 17, 1989 hearing before the referee).

On appeal, Claimant contests fact-finding 12 and asserts that it is not supported by substantial evidence of record inasmuch as it states that Clearfield County Deputy Sheriff Evanko "did not initiate a request for [Claimant's] assist-

ance" in subduing the prisoner.[3]  Substantial evidence is that evidence which "a reasonable mind would accept as adequate to support a conclusion." *City of New Castle v. Workmen's Compensation Appeal Board*, 65 Pa.Commonwealth Ct. 25, 29 n. 2, 441 A.2d 803, 806 n. 2 (1982); *Krumins Roofing & Siding v. Workmen's Compensation Appeal Board (Libby and State Workmen's Insurance Fund)*, 133 Pa.Commonwealth Ct. 211, 575 A.2d 656 (1990).

In pertinent part, Claimant testified before the referee at the January 17, 1989 hearing as follows:

Q[uestion:]  What did you [Claimant] do when you saw this scuffle [between Deputy Sheriff Stephen A. Evanko and the prisoner] going on?

A[nswer:]  I immediately run [sic] over there to where Steve [Deputy Sheriff Evanko] and him [the prisoner] were wrestling and kicking.

. . . .

Q  Did you say anything to Deputy Evanko?

A  I asked him if there was anything that he needed.

Q  What did he [Deputy Sheriff Evanko] say?

A  I remember that he said, I would appreciate a hand.

. . . .

Q  Did I understand you to say that you asked the deputy if anything was needed?

A  Yes.

Q  You asked him?

A  Right.

Q  You started the conversation?

A  I did.

3.  In his brief, Claimant asserts that the referee's fact-findings are not supported by substantial evidence of record, but Claimant does not identify any disputed fact-findings by referring to the specific numbers which the referee utilized in her October 12, 1989 Decision to enumerate her fact-findings.  However, on page 17 of his brief, Claimant argues that he "was impressed into public service by Deputy Sheriff Evanko by his call for assistance."  Consequently, we have concluded that Claimant is contesting the referee's fact-finding 12. Additionally, as subsequently discussed in this opinion, we have concluded that the remainder of Claimant's challenges to "fact-findings" are actually challenges to conclusions of law.

Q He didn't ask you?

A No. I don't think he was in any position to ask or say anything.

Q But you initiated the conversation and not the deputy?

A Correct.

Q And he responded by saying, I would appreciate a hand?

A That's right.

Q Is that an accurate statement or is that just words to that effect?

A It's as I remember it. Steve said, I would appreciate a hand.

Q But that is after you asked him?

A Correct.

Tr. 9, 21–22.

In pertinent part, the deputy sheriff testified before the referee at the January 17, 1989 hearing as follows:

Q Who approached who [sic] first, did you talk to Mr. Haines first or did he talk to you first?

A He talked to me first.

Q So he came up to you?

A Yes. At that time I believe my back was actually facing the direction that he was coming from.

Q If I understand, he asked you if you wanted help?

A Yes.

Q And you didn't say come over here and help me?

A No.

Tr. at 41.

Because both Claimant's testimony about the November 24 incident and the deputy sheriff's testimony about the November 24 incident are consistent with the referee's determination in fact-finding 12 that the deputy sheriff did not initiate Claimant's participation in the November 24 incident, we conclude that substantial evidence of record supports fact-finding 12. Claimant's testimony and the deputy sheriff's testimony both reveal that Claimant not

only made an impromptu offer of assistance unprompted by the deputy sheriff but also provided spontaneous and self-initiated assistance to the deputy sheriff in a manner of Claimant's own choosing, i.e., lifting the prisoner's feet.

Moreover, we note that fact-finding 12 is consistent with fact-findings 6 and 11 which Claimant has not contested on appeal. In fact-finding 12, the referee found that the deputy sheriff did not initiate a request for Claimant's assistance. In fact-finding 6, the referee found that Claimant voluntarily injected himself into the November 24 incident by running to the area of the deputy sheriff's struggle with the prisoner, by offering to help the deputy sheriff, by spontaneously helping the deputy sheriff to restrain the prisoner, and by deciding on his own initiative to immobilize the prisoner's feet. In fact-finding 11, the referee found that the deputy sheriff recalled Claimant's coming to the deputy sheriff and offering to help the deputy sheriff. Therefore, in all three fact-findings, the referee found that Claimant initiated his participation in the November 24 incident through his own actions, i.e., by approaching the deputy sheriff, by asking whether he could help the deputy sheriff, and by spontaneously helping the deputy sheriff in a manner of Claimant's own choosing. None of the fact-findings in the referee's October 12, 1989 Decision indicate that the deputy sheriff initiated Claimant's participation in the incident by actively soliciting Claimant's assistance or by directing the manner of Claimant's assistance. Fact-findings 6, 11, and 12 merely indicate that the deputy sheriff accepted the unsolicited and undirected assistance which Claimant spontaneously and voluntarily offered.

To summarize, we conclude that substantial evidence of record supports the referee's findings that an emergency occurred on November 24, 1987 and that Claimant's involvement in the emergency was precipitated by Claimant and did not result from a request for assistance made by the deputy sheriff.

Next, Claimant argues on appeal that the Board erred as a matter of law by agreeing with the referee's

conclusion that the testimony of witnesses Michael W. Mowery and Joan Haines–Bergum was not relevant to the disposition of Claimant's workmen's compensation claim petition.[4]

■ The referee permitted the presentation of Mowery's and Haines–Bergum's testimony, but, after hearing and considering the substance of these witnesses' testimony, the referee explicitly rejected Mowery's and Haines–Bergum's testimony "as having no significance to the issue of employee-employer relationship." Referee's October 12, 1989 Decision, fact-finding 9, at 3. Claimant asserts that, contrary to the referee's conclusion, the testimony of Mowery and Haines–Bergum was relevant to establishing a material fact in the case, namely, whether Claimant's participation in the incident was triggered by Claimant's spontaneously offering assistance to the deputy sheriff or whether Claimant's participation in the incident was triggered by the deputy sheriff's solicitation of Claimant's assistance.

"Evidence is relevant if it tends to establish facts in issue." *Monaci v. Workmen's Compensation Appeal Board (Ward Trucking)*, 116 Pa.Commonwealth Ct. 172, 175, 541 A.2d 60, 62 (1988). Otherwise stated, "[e]vidence

---

**4.** In his brief, Claimant challenges this evidentiary ruling by asserting that substantial evidence of record does not support the referee's determination that the testimony of Mowery and Haines–Bergum was irrelevant. We note that the referee listed her ruling on the relevance of Mowery's and Haines–Bergum's testimony in the fact-finding section of her decision. Referee's October 12, 1989 Decision, fact-finding 9, at 3. However, a referee's labelling of a determination is not dispositive of whether the determination is a fact-finding or a conclusion of law. *American Mutual Liability Insurance Co.; Universal Cyclops Steel Corp. v. Krawczynski*, 9 Pa.Commonwealth Ct. 176, 305 A.2d 757 (1973). A ruling on the relevance of evidence is a legal conclusion and not a fact-finding. *Siano v. Workmen's Compensation Appeal Board (Dileo's Restaurant, Inc.)*, 137 Pa.Commonwealth Ct. 487, 586 A.2d 1008 (1991); *Monaci v. Workmen's Compensation Appeal Board (Ward Trucking)*, 116 Pa.Commonwealth Ct. 172, 541 A.2d 60 (1988); *Airco Speer Carbon v. Workmen's Compensation Appeal Board*, 38 Pa.Commonwealth Ct. 274, 392 A.2d 360 (1978); *Commonwealth v. Strickland Transportation Corp.*, 30 Pa.Commonwealth Ct. 463, 373 A.2d 1188 (1977). Therefore, we shall consider whether the ruling on the relevance of Mowery's and Haines–Bergum's testimony constituted an error of law.

which tends to establish some fact material to the case, or which tends to make a fact at issue more or less probable, is relevant." *Commonwealth v. Scott,* 480 Pa. 50, 54, 389 A.2d 79, 82 (1978).

Mowery did not testify at the January 17, 1989 hearing before the referee. Instead, Mowery was deposed on May 18, 1989, with respect to Claimant's workmen's compensation petition, and Mowery's deposition was admitted into evidence before the referee. In his deposition, Mowery testified that, on November 24, 1987, while he was employed as the Clearfield County coroner, he was pulling his car into his parking place about two blocks from the scene of the incident when he heard a police radio call regarding the incident. May 18, 1989 Deposition of Michael W. Mowery at 4–6. Mowery further testified that he responded to the radio call by driving his car from the parking lot to the scene of the incident. Id. at 5. Mowery stated that, when he arrived at the scene of the incident, Claimant was holding the prisoner's legs. *Id.* at 7. In his deposition, Mowery further stated:

> Q Would you have any personal knowledge, Mr. Mowery, of how Mr. Haines got involved?
>
> A No, sir, I don't. However, that happened, it occurred before I arrived.

*Id.* at 13.

Consequently, Mowery's first-hand observation of the incident and his testimony regarding the incident concern solely the events that occurred after Claimant had already begun participating in the incident. Mowery admitted that, by time of his arrival at the scene of the incident, Claimant was already participating in the incident by immobilizing the prisoner's legs in order to assist the deputy sheriff. *Id.* at 7. Nothing in Mowery's deposition testimony relates to the conditions that existed when Claimant became involved in the incident or to what precipitated Claimant's participation in the incident. Mowery specifically disavowed any personal knowledge of how Claimant became involved in incident. Therefore, we hold that the Board properly af-

firmed the referee's conclusion that Mowery's testimony was not relevant to establishing either whether an emergency existed at the time of Claimant's actual involvement in the incident or whether Claimant's participation in the incident was initiated by Claimant or by the deputy sheriff.

Haines–Bergum testified at an April 18, 1989 hearing before a referee and identified herself as Claimant's ex-wife. Tr. at 5. Haines–Bergum stated that, on November 24, 1987, she and Claimant were speaking together outside her house which was located across the street from the scene of the incident. *Id.* at 4–5. Additionally, Haines–Bergum testified that she observed the deputy sheriff and the prisoner struggling together on the ground and that she "just turned around and ran in the house and ... called the 911 number." *Id.* at 5. When asked whether she again went outside to observe the incident, Haines–Bergum testified as follows:

A  Yes, I did.

. . . .

Q  Now, when you got back outside, what did you observe at that point?

A  I saw the officer [Deputy Sheriff Evanko] and Lloyd [Claimant] and the prisoner; they were like struggling over on the lawn.

*Id.* at 6.

Therefore, like Mowery, Haines–Bergum lacked any first-hand knowledge of the conditions that existed at the time of Claimant's involvement in the incident or of what triggered Claimant's participation in the incident. Accordingly, we hold that the Board properly affirmed the referee's conclusion that the testimony of Haines–Bergum was not relevant to establishing either whether an emergency existed at the time of Claimant's actual involvement in the incident or whether Claimant's participation in the incident was initiated by Claimant or by the deputy sheriff.

■  Additionally, Claimant contends on appeal that the Board committed an error of law by affirming the referee's

ruling sustaining Clearfield County's objection to Claimant's Exhibit 1 which was a criminal complaint that had been filed against the prisoner involved in the November 24, 1987 incident.[5] The referee sustained the objection on the ground that the complaint was not relevant to the issue of the existence of an employment relationship between Claimant and Clearfield County on November 24, 1987. Referee's October 12, 1989 Decision, conclusion of law 2, at 3.

Claimant's counsel attempted to offer the complaint into evidence during his cross-examination of Deputy Sheriff Evanko. January 17, 1989 Hearing, Tr. 39–40. According to the statements made by Claimant's counsel at the January 17, 1989 hearing, the complaint was offered "to show the seriousness of what was going on" between the deputy sheriff and the prisoner, Tr. 36, because "[i]t details in the affidavit attached to it [i.e., the complaint] the events as stated by the officer [i.e., Deputy Sheriff Evanko] at the time of making on December 1, 1987." Tr. 40.

The deputy sheriff was a witness at both hearings in this case and was subject to direct and cross-examination at the hearings. Nothing in the record or in Claimant's appellate brief indicates that any statements made by the deputy sheriff in conjunction with the complaint were incompatible with statements made by the deputy sheriff on direct and cross-examination at the January 17, 1989 and April 18, 1989 hearings in this case. The complaint was not offered to impeach Deputy Sheriff Evanko's testimony. January 17, 1989 Hearing, Tr. 36–40.

Under these circumstances, it was within the referee's discretion to reject the complaint and accompanying affidavit as cumulative evidence corroborative of the deputy sheriff's hearing testimony which, as discussed above with respect to fact-finding 12, established that Claimant's par-

5. In his appellate brief, Claimant argues that the referee's ruling in this regard was not supported by substantial evidence of record. However, because a ruling on the relevance of evidence is a conclusion of law and not a fact-finding, *Siano; Monaci; Airco Speer Carbon; Strickland Transportation Corp.,* we shall consider whether the ruling constituted an error of law.

ticipation in the November 24 incident was not initiated by the deputy sheriff. *See Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975); *Smith v. Commonwealth,* 80 Pa.Commonwealth Ct. 117, 470 A.2d 1125 (1984). Consequently, we hold that the Board properly affirmed the referee's conclusion that the complaint was irrelevant because the complaint could not help Claimant establish that he was in an employment relationship with Clearfield County on November 24, 1987.

Finally, Claimant argues on appeal that the Board committed an error of law by agreeing with the referee's legal conclusion that no employment relationship existed between Claimant and Clearfield County on November 24, 1987. Having decided (1) that substantial evidence of record supports the referee's finding that Claimant's participation in the November 24, 1987 emergency was not in response to a request for assistance, (2) that the testimony of Mowery and Haines–Bergum was properly ruled irrelevant, and (3) that the criminal complaint against the prisoner was properly excluded, we hold that the Board did not err as a matter of law by affirming the referee's legal conclusion that Claimant did not establish the existence of an employment relationship with Clearfield County on November 24, 1987 and therefore could not qualify for workmen's compensation benefits as a result of his involvement in the November 24 incident.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, March 18, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.